Edward P. McCONNELL, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 92–9500.

United States Court of Appeals, Tenth Circuit.

April 27, 1993.

Jonathan Wilderman, Wilderman & Linnet, P.C., Denver, CO, for petitioner.

Marshall J. Breger, Sol. of Labor, Donald S. Shire, Associate Sol. of Labor, Patricia M. Nece, Counsel for Appellate Litigation, and Eileen M. McCarthy, Attorney, U.S. Dept. of Labor, Washington, DC, for respondent.

Before TACHA and BRORBY, Circuit Judges, and BROWN, Senior District Court Judge.*

TACHA, Circuit Judge.

Edward P. McConnell appeals a decision of the Benefits Review Board denying his claim for waiver of overpayment recovery. We exercise jurisdiction under 33 U.S.C. § 921(c) and affirm in part and reverse in part.[1]

## I.

In June, 1980, Edward McConnell filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (as amended). On August 6, 1981, the Deputy Commissioner of the Department of Labor ("DOL") approved McConnell's claim and notified his employer, Kaiser Steel Corporation ("Kaiser"), of its liability for these benefits. Because Kaiser contested the claim, the Black Lung Disability Trust Fund ("Trust Fund") began to pay "interim" benefits. On August 20, 1981, the Deputy Commissioner notified McConnell that he would receive from the Trust Fund a lump-sum $5,758.60 check for accrued benefits and a monthly $419.60 check thereafter. This letter, however, also ad-

---

* The Honorable Wesley E. Brown, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

vised McConnell of the provisional nature of Trust Fund payments:

> These interim benefits are temporary, pending a final decision on your claim. If it is later determined by an Administrative Law Judge, the Benefits Review Board or a U.S. Court of Appeals that you are not eligible to receive these payments, an overpayment will exist and you may be responsible for repayment of all money received from the Black Lung Disability Trust Fund.

On November 10, 1982, an Administrative Law Judge ("ALJ") awarded benefits after hearing the contested claim. Kaiser appealed to the Benefits Review Board which, on August 28, 1986, vacated the award and remanded the case to the ALJ for reconsideration. On March 10, 1987, the ALJ determined on reconsideration that McConnell was not entitled to benefits and denied the claim. The ALJ's decision denying benefits, which McConnell did not appeal, is now final.

On April 15, 1987, the DOL notified McConnell that the ALJ's decision had resulted in an overpayment of black lung benefits totaling $37,360. After an informal conference on March 2, 1988, the Deputy Commissioner found that McConnell was without fault in the creation of the overpayment but nevertheless declined to waive repayment after concluding that repayment would not deprive McConnell of his ordinary and necessary income and that McConnell had not changed his position for the worse on account of receiving the benefits. Instead, the DOL ordered McConnell to repay the full amount of the benefits. On March 22, 1990, an ALJ affirmed the DOL's order denying waiver and directed repayment at the rate of $525 per month. The Benefits Review Board affirmed the ALJ's decision on November 13, 1991. This appeal followed.

## II.

■■■ The Black Lung Benefits Act provides for the compensation by private employers of miners afflicted with pneumoconiosis. 30 U.S.C. §§ 901–945. In 1977, Congress created the Trust Fund in order to provide claimants with interim payments. *See* 26 U.S.C. § 9501.[2] Section 413(b) of the Black Lung Benefits Act authorizes the DOL to recover erroneous Trust Fund payments under the provisions set forth in § 204 of the Social Security Act, 42 U.S.C. § 404, which govern the recovery of Social Security "overpayments." *See* 30 U.S.C. § 923(c). Section 204 specifically limits the recovery of overpayments from persons without fault:

> In any case in which more than the correct amount of payment has been made, there shall be no [ ] recovery by the United States from . . . any person who is without fault if such . . . recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

*Id.* § 404(b). Thus, when recovery of overpayments from a faultless beneficiary would defeat the purposes of the act or be against equity or good conscience, recovery of the overpayment is to be waived. Congress did not define the phrases "without fault," "defeat the purposes of this subchapter," or "against equity and good conscience."

The Black Lung Benefits Act's implementing regulations at 20 C.F.R. §§ 410.561a–.561h mirror the § 204 criteria contained in the Social Security Act's implementing regulations at 20 C.F.R. §§ 404.506–.512. The Black Lung regulations begin by restating the statutory mandate:

> There shall be no . . . recovery in any case where an incorrect payment . . . has been made with respect to an individual:
> (a) Who is without fault, and
> (b) . . . recovery would either:
> (1) Defeat the purpose of title IV of the Act, or
> (2) Be against equity and good conscience.

20 C.F.R. § 410.561a. The regulations then define the operative phrases. Section 410.561c defines "defeat the purpose of title IV of the Act" as "to deprive a person of income required for ordinary and necessary living expenses," *id.* § 410.561c, while § 410.561d defines "against equity and good conscience"

---

**2.** Section 9501(d) governs expenditures from the Trust Fund and provides, in pertinent part, for payment of benefits from the Trust Fund where the operator liable for the payments does not commence those payments within thirty days of the initial eligibility determination. 26 U.S.C. § 9501(d)(1).

to mean that the individual, because of the payment, has either "relinquished a valuable right" or "changed his position for the worse" on account of the benefits, *id.* § 410.561d.[3] Section 410.561d provides two examples of situations in which recovery would be against equity and good conscience. *Id.*[4] Finally, the regulations contain two deeming provisions that operate independently of §§ 410.561b, 410.561c, and 410.561d. Section 410.561h(a) provides that recovery is deemed to be against equity and good conscience when an individual is deemed to be without fault under § 410.561f. *Id.* § 410.561h(a). In turn, § 410.561f deems an individual to be without fault when he "accepts such overpayments because of reliance on erroneous information from an official source within the Administration ... with respect to the interpretation of a pertinent provision of the Act or regulations pertaining thereto...." *Id.* § 410.561f. Thus, when an individual relies on erroneous information, he is per se entitled to waiver because the regulations deem his circumstances to satisfy both the "without fault" and "against equity and good conscience" elements for waiver under § 410.561a.

### III.

■ We review the Benefits Review Board's decision to determine whether it erred in concluding that the ALJ's decision denying waiver was supported by substantial evidence and made in accordance with applicable law. *See Garcia v. Director, OWCP,* 869 F.2d 1413, 1415 (10th Cir.1989). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir.1991) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *see also Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988). The claimant bears the burden of establishing entitlement to waiver under the regulations. *See Valente v. Secretary of Health & Human Servs.,* 733 F.2d 1037, 1042 (2d Cir. 1984).

McConnell contends that repayment should be waived for three reasons. He first argues that he is entitled to waiver under the deeming provisions because the DOL's initial determination of entitlement to benefits constituted "erroneous information" upon which he relied. Second, he contends that the ALJ

---

**3.** Section 410.561b provides that an individual is "without fault" unless the facts show that the payments resulted from

  (a) [a]n incorrect statement made by the individual which he knew or should have known to be incorrect; or

  (b) [f]ailure to furnish information which he knew or should have known to be material; or

  (c) [w]ith respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 410.561b. The DOL concedes that McConnell was "without fault" in the creation of the overpayment at issue in this case.

**4.** Section 410.561d provides in full:

  *Against equity and good conscience* means that adjustment or recovery of an incorrect payment will be considered inequitable if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right (example 1); or changed his position for the worse (example 2). In reaching such a determination, the individual's financial circumstances are irrelevant.

  *Example 1.* After being awarded benefits, an individual resigned from employment on the assumption he would receive regular monthly benefit payments. It was discovered 3 years later than [sic] (due to Administration error) his award was erroneous because he did not have pneumoconiosis. Due to his age, the individual was unable to get his job back, and could not get any other employment. In this situation, recovery or adjustment of the incorrect payments would be against equity and good conscience because the individual gave up a valuable right.

  *Example 2.* A widow, having been awarded benefits for herself and her daughter, entered her daughter in college because the monthly benefits made this possible. After the widow and her daughter received payments for almost a year, the deceased worker was found not to have had pneumoconiosis and all payments to the widow and child were incorrect. The widow has no other funds with which to pay the daughter's college expenses. Having entered the daughter in college and thus incurred a financial obligation toward which the benefits had been applied, she was in a worse position financially than if she and her daughter had never been entitled to benefits. In this situation, the recovery of the incorrect payments would be inequitable.

incorrectly calculated his income and expenses, thereby reaching an erroneously high surplus figure, and that his actual surplus is so small that any recovery would defeat the purposes of the Act by depriving him of his ordinary and necessary income. Finally, McConnell contends that recovery would be against equity and good conscience because he changed his position for the worse when he took a $5000 vacation to visit relatives and when his wife deeded three houses to her daughter in 1986. Because the DOL concedes that Mr. McConnell was "without fault" within the meaning of § 410.561b, Mr. McConnell is entitled to waiver under § 410.-561a if recovery would either defeat the purposes of the Act or be against equity and good conscience.

#### A. *Waiver Under the Deeming Provisions*

█ McConnell argues that he twice relied on "erroneous information" respecting the overpayments when (1) the Deputy Commissioner initially determined that he was entitled to benefits, and (2) the ALJ initially awarded benefits in 1982. Although we find no federal court decision examining whether the "erroneous information" clause reaches the initial determination of entitlement, the Benefits Review Board consistently has rejected that position. *See Nelson v. Director, OWCP*, 14 Black Lung Rep. (MB) 1–159, 1–161 (Ben.Rev.Bd.1990); *Weis v. Director, OWCP*, 16 Black Lung Rep. (MB) 1–56, 1–58 (Ben.Rev.Bd.1990). We agree.

The regulations at 20 C.F.R. § 725.522 specifically contemplate recovery in the situations described by McConnell. That provision states:

> If benefit payments are commenced prior to the final adjudication of the claim and it is later determined by an administrative law judge, the Board, or court that the claimant was ineligible to receive such payments, such payments shall be considered overpayments pursuant to § 725.540 of

this subpart which may be recovered in accordance with the provisions of this subpart.

20 C.F.R. § 725.522(c). The erroneous information deeming provision in § 410.561f is one of the recovery provisions referred to in § 725.522(c). Thus, McConnell's construction of the deeming provision would waive recovery whenever the agency made an incorrect initial determination, thereby rendering § 725.522(c) meaningless. *See Weis*, 16 Black Lung Rep. at 1–58. Furthermore, even were we to find McConnell's contention consonant with the regulations, we fail to see what was "erroneous" about the information he received. The letter notifying him of his benefits expressly—and correctly—stated that the benefits were temporary and subject to repayment.[5]

Having decided that the agency's initial determination does not constitute erroneous information, we easily conclude that the award of benefits by the ALJ also fails in that regard. The regulations speak to reversal by not just an ALJ but by the Benefits Review Board or the Court of Appeals. 20 C.F.R. § 725.522(c). Clearly, then, the regulations contemplate a situation, such as ours, where the Deputy Commissioner's award of benefits is upheld by the ALJ but reversed by the Benefits Review Board. Thus, like the Deputy Commissioner's initial determination, an ALJ's nod of approval logically cannot satisfy the deeming provision. In addition, the initial determination specified that the benefits were subject to reversal by the Benefits Review Board. Because the ALJ's first award necessarily incorporated that limitation, it was similarly devoid of "erroneous" information. The ALJ properly concluded that McConnell may not avail himself of the deeming provisions in this case.

---

5. We acknowledge the existing body of case law which appears to limit this provision to those situations where agency officials or employees render erroneous advice in response to the claimant's inquiry regarding his eligibility to receive or keep a particular payment. *Beaudry v. Secretary of Health & Human Servs.*, 1991 WL 319161, at *8 (D.Mass.1991); *see also Valente*, 733 F.2d at 1044 (individual erroneously advised by Social Security employee that she could keep undeserved payments); *Morris v. Harris*, 663 F.2d 1014, 1015–16 (10th Cir.1981) (repayment not against equity and good conscience where agency officials advice not erroneous). Because we find that McConnell's argument must fail as inherently inconsistent with the regulatory scheme, we do not address these elemental restrictions to the deeming provisions.

### B. Would Recovery Defeat the Purposes of the Act?

Recovery of an overpayment defeats the purposes of the Act when it "deprive[s] a person of income required for ordinary and necessary living expense. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." 20 C.F.R. § 410.561c(a). Relevant expenses include food, clothing, rent or mortgage payments, utilities, insurance, installment payments, medical expenses, support of others for whom the individual is legally responsible, and "[o]ther miscellaneous expenses which may reasonably be considered as part of the individual's standard of living." Id.

McConnell submitted his overpayment questionnaire [6] detailing his monthly finances at the hearing before the ALJ. The questionnaire listed assets consisting mainly of a rental house in Raton, New Mexico, assessed at about $13,000, a 1979 pickup truck worth $2,000, and a checking account balance of less than $500. He calculated that his social security benefits, pension benefits, and rental income totalled $1,683.50 per month. McConnell estimated his monthly expenses at $1,364.57. The ALJ, while finding some of McConnell's reported expenses "high" and "somewhat unusual," did not dispute that figure. The McConnells live rent-free in a house owned by Mrs. McConnell's daughter, Glenda Trujillo,[7] but pay for repairs and utilities. Under McConnell's own calculations, then, he has a monthly surplus of almost $320 per month.

The ALJ, however, disputed McConnell's calculation of his income because it did not include his wife's social security benefits. Apparently, McConnell excluded his wife's social security benefits because she deposits them in a separate checking account and uses them to support Ms. Trujillo and her children and grandchild. The ALJ held that Mrs. McConnell's social security benefits had been erroneously excluded because McConnell could not include his wife's expenses but exclude her income. The ALJ then determined that, after including Mrs. McConnell's income, recovery of the overpayment would not defeat the purposes of the Act and that Mr. McConnell had excess income sufficient to repay the overpayment at the rate of $525 per month. On appeal, McConnell argues that (1) his wife's social security benefits should not be counted because they are his wife's property and because they are used to support close relatives, and (2) his and his wife's poor health require a substantial "cushion" of excess income in order to pay anticipated medical bills.

We first hold that the ALJ properly included Mrs. McConnell's benefits. In general, the regulations take a functional approach to discerning income and expenses and we agree that the income and expenses of both spouses should be included. See, e.g., Gavin v. Heckler, 620 F.Supp. 999, 1001 (N.D.Ill.1985) (determining expenses according to household, rather than individual); Ashe v. Director, OWCP, 16 Black Lung Rep. (MB) 1–109, 1–112 (Ben.Rev.Bd.1992) (rejecting claimant's assertion that wife's separately held assets should not be counted). We reject, however, McConnell's invitation to include the expenses of his wife's family. The regulations expressly provide for including "expenses for the support of others for whom the individual is legally responsible." 20 C.F.R. § 410.561c(a)(3). McConnell presented no evidence whatsoever that he and his wife are legally responsible for the support of his wife's forty-three year old, partially-employed daughter or her offspring. While we appreciate Mrs. McConnell's charity, we cannot include it as an expense under these regulations. See, e.g., Hannah v. Bowen, 1988 WL 252104, at *2 (S.D.Ohio 1988) (excluding payment of son's mortgage and expenses absent any allegation of legal responsibility of support). Instead, we, like the ALJ, interpret the regulations as sensibly

---

**6.** The record contains several questionnaires filed by McConnell for different years. We refer to the 1989 questionnaire, which was the most current document at the time of the hearing and which served as the basis for the ALJ's calculations.

**7.** In 1986, Mrs. McConnell deeded three houses which she received as divorce property from her previous husband to Ms. Trujillo. Ms. Trujillo lives in one house, the McConnells live in another, and the third is rented.

counting the income and expenses of the household as defined by legal responsibility. Under this formula, Mr. McConnell's actual monthly expenses, as evidenced by the 1989 questionnaire, are $1,364.57 and his actual monthly income, including his wife's monthly Social Security payment of $320, is $2,003.50.

█ Second, we acknowledge McConnell's argument concerning an income cushion but find no error. The regulations expressly state that recovery will defeat the purposes of the Act where the claimant needs *substantially* all of his income to cover his relevant expenses. 20 C.F.R. § 410.561c(b). We agree with the decisions that interpret this language to contemplate a small monthly cushion where warranted, *see, e.g., Teamer v. Secretary of Health & Human Servs.*, 764 F.Supp. 1328, 1333 (N.D.Ind.1991) (recovery defeats purposes of Act where individual needs *substantially all* of income); *Posnack v. Secretary of Health & Human Servs.*, 631 F.Supp. 1012, 1015 (E.D.N.Y.1986) (individuals are "entitled to retain sufficient monetary resources in order to be prepared for emergencies"), but fail to see how that principle affects this appeal. The McConnell's actual monthly income of $2,003.50 exceeds their monthly expenses of $1,364.57 by $638.93 per month. Thus, a monthly payment of $525 still leaves a sufficient monthly cushion of almost $114.

We hold that the Benefits Review Board properly concluded that the ALJ's determination that a monthly repayment of $525 would not defeat the purposes of the Act is supported by substantial evidence. The denial of McConnell's petition for waiver under 20 C.F.R. § 410.561c is therefore affirmed.

C. *Would Recovery Be Against Equity and Good Conscience?*

McConnell argued below that recovery of the overpayment would be against equity and good conscience because he changed his position for the worse in reliance on the benefits. Upon receiving a lump sum black lung benefits payment of $5,758.60 in January, 1982, McConnell and his wife took a six-week car vacation to visit relatives on the East coast. McConnell testified to the ALJ that he would not have taken the vacation absent the benefits award and argued that his vacation expenditures thus constituted a change in position for the worse.[8]

The ALJ disagreed, concluding that recovery of overpayment is not against equity and good conscience where a claimant takes a vacation upon receipt of lump-sum benefits because "so spending the monies in these circumstances in my judgment and based on the interpretation of § 410.561d on which § 725.542(b)(2) is based, do not equate with the intended thrust of the regulatory examples." The Benefits Review Board agreed, finding that the ALJ "reasonably found that this expenditure did not equate with the intended thrust of the regulatory examples of 20 C.F.R. § 410.561d."

On appeal, McConnell reiterates his contention that the vacation expenses constituted a change in position for the worse. We read his brief to challenge not the ALJ's factual findings in this regard but its legal conclusion that § 410.561d excludes consideration of McConnell's vacations expenses as being outside the "thrust" of the regulation, an issue which we review de novo.

█ We begin with the specific elements of the regulation, which provides that recovery of an overpayment is against equity and good conscience when the claimant, "because of a notice that such payment would be made or by reason of the incorrect payment ... changed his position for the worse." 20 C.F.R. § 410.561d. This means that the claimant must demonstrate (1) a change in position (2) for the worse and (3) a causal

---

8. For the first time on appeal, McConnell argues that the deeding of property to his wife's daughter constitutes a change of position for the worse. Although waiver of recovery of overpayments has been granted on similar facts, *see Pruiett v. Director, OWCP*, 15 Black Lung Rep. (MB) 3–463, 3–470 (Dep't of Labor, Office of ALJs June 28, 1991) (claimant deeded house to daughter but retained life estate and accompanying obligation to ameliorate waste), McConnell did not present this argument to either the ALJ or the Benefits

Review Board. McConnell's failure to raise this argument with the Board "constitutes failure to exhaust administrative remedies and deprives the Court of Appeals of jurisdiction to hear the matter." *Rivera–Zurita v. I.N.S.*, 946 F.2d 118, 120 n. 2 (10th Cir.1991); *see also Hix v. Director, OWCP*, 824 F.2d 526, 527–28 (6th Cir.1987) (failure to challenge rebuttal of disability presumption in Black Lung case precluded appellate review of that argument).

relationship between the benefits and the change in position.

■ First, a claimant "changes position" for purposes of the Act when he takes new action or incurs a new expense or obligation. *See Beaudry*, 1991 WL 319161 at *6; *see, e.g., Morishita v. Bowen*, 1989 WL 280360, at *2 (D.Utah 1989) (payment of preexisting debts not a change of position). Although the individual must actually incur the expense or obligation, *see Seigler v. Secretary of Health & Human Servs.*, 1986 WL 83453, at *3 (D.S.C.1986) (disruption of budget not a change in position because claimant neither incurred debts nor made substantial purchases), the change need not be "dramatic," *see, e.g., Cucuzzella v. Weinberger*, 395 F.Supp. 1288, 1298 (D.Del.1975) ($3500 per year tuition); *see also Milton v. Harris*, 616 F.2d 968, 975 (7th Cir.1980) (change may be "minor").

Second, the new act or obligation must be for the worse. *See, e.g., Fleming v. Califano*, 484 F.Supp. 721, 726 (E.D.Pa.1980) (claimant failed to demonstrate that sale of house and purchase of investments subsequent to award of benefits were a change in position for the worse); *Orlandini v. Weinberger*, 421 F.Supp. 586, 591–92 (E.D.Wis.1976) (investing benefits in personal business not change for the worse).

■ Finally, the new act or obligation must be linked to the award of benefits. *See Milton*, 616 F.2d at 974–75 (award of benefit did not cause ineligibility for public housing where claimant elected not to apply; alleged change in position was too "speculative" and "remote"). Thus, it is not enough under this provision to simply have spent the amount received. Rather, the individual must show that he "spent the money in a way in which [he] would not have but for the receipt of the overpayments...." *Posnack*, 631 F.Supp. at 1016; *see also Wolter v. Sullivan*, 1990 WL 166527, at *2 (W.D.Wash.1990) (care of children not an expenditure caused by the award of benefits); *Hannah*, 1988 WL 252104, at *4 (purchase of unmarketable property does not support waiver where it was initiated prior to the overpayment).

■ Applying this analysis, it is clear that the McConnell's vacation satisfies the literal requirements for a "change in position" waiver: they spent a substantial and unrecoverable sum of money on an activity which they would not have undertaken absent the award of benefits.[9] The DOL nevertheless contends that the McConnell's vacation is not the *type* of change in position for which waiver should be granted. We reject this argument for several reasons.

First, neither the statute nor the regulations limits the types of changes in position that can trigger waiver. Although "college tuition" appears to be the most cited change in position meriting waiver, *see, e.g., Robles v. Bowen*, 1989 WL 113174, at *3 (E.D.N.Y. 1989); *Polemis v. Heckler*, No. 84 Civ. 2804 (WK), 1986 WL 83405, at *5–*6 (S.D.N.Y. June 10, 1986) (private college prep school); *Cucuzzella*, 395 F.Supp. at 1298, we suspect this to be a function of example 2 of the regulations, which is clearly illustrative and not exhaustive, rather than a reflection on the scope of the text. In fact, the text of neither the statute nor the regulations supports the conclusion that equitable waiver is limited to the pursuit of higher education or any other specific activity or endeavor.[10]

9. The transcript of the hearing before the ALJ contains two pages of McConnell's testimony concerning the trip and includes the following colloquy:

Q. Did you spend this money you had received by lump sum payment on black lung [sic] to be able to afford to take this trip?

A. I wouldn't have took it if I hadn't gotten it.

Q. Did you have enough money to take the trip without the black lung payment?

A. No.

Although the government objected to the relevancy of this line of questioning, it did not contest either the fact of the trip or McConnell's estimate of the expense. In addition, while the government cross-examined McConnell thoroughly about his everyday income and expenses, it made no inquiry into the facts surrounding this vacation. Finally, whereas the DOL's brief discusses at length the motive behind Mrs. McConnell's transfer of real property to her daughter, in an attempt to establish that she did not rely on the benefits in taking that action, it contests the vacation only as being outside the general scope of the waiver provisions, rather than challenging reliance. We therefore find that the DOL has conceded that the McConnells took their vacation in reliance on the benefits.

10. Our research failed to discover any decision either by the federal courts or by the Benefits Review Board discussing whether § 410.561d

Second, we discern no valid reason to interject any such limitation into the regulatory scheme. Perhaps an extended vacation might not be as noble an expenditure as college tuition, but the regulation provides no basis for such a distinction. We note that the regulations *explicitly* forbid us from considering the claimant's financial circumstances when making waiver determinations. *See* 20 C.F.R. § 410.561d ("In reaching such a determination, the individual's financial circumstances are irrelevant."). Under even the DOL's proposed interpretation, then, a financially comfortable claimant presumably could invoke waiver after deciding to send a child to an expensive private college rather than the state university or local community college. Given the potential for such results, we fail to see how the regulations could *implicitly* direct us to distinguish between supposedly "worthy" and "unworthy" claimants.

We acknowledge that two other circuits have disregarded these particular regulations as an unreasonably narrow interpretation of the statutory mandate to grant waiver when required by "equity and good conscience." *See Quinlivan v. Sullivan,* 916 F.2d 524, 526–27 (9th Cir.1990); *Groseclose v. Bowen,* 809 F.2d 502, 505–06 (8th Cir.1987). In both cases, the court went outside the parameters of the regulations to grant waiver to sympathetic claimants who technically failed to qualify.

We face the mirror image of those situations. In this case, the claimant qualifies under the regulations notwithstanding the fact that the circumstances surrounding his overpaid benefits might not evoke the sympathetic response normally associated with "equity and good conscience." Nevertheless, we grant the waiver. Because the organic statute is silent with respect to the meaning of the phrase "against equity and good conscience," we owe considerable deference to the administering agency's interpretation. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Although we might not have adopted these particular regulations, we must respect the agency's role and defer to their permissible construction of the statute. *Id.* While the Eighth and Ninth Circuits may have correctly concluded that Congress *must have intended* waiver in the circumstances presented by those cases, we cannot conclude that Congress *did not intend* waiver on the facts before us today. Therefore, applying the regulations as written,[11] we hold that McConnell has satisfied the requirements for equitable waiver under § 410.561d.

Because both the ALJ and Benefits Review Board denied waiver entirely, neither

---

was limited to certain types of expenditures or obligations. The ALJ decisions from just the past two years, however, contain numerous examples and, more importantly, demonstrate that our inquiry is no mere academic exercise. ALJ's have granted "change of position" waiver for the purchase of new cars, *see, e.g., Woolsey v. Director, OWCP,* No. 89–BLO–150, 1992 BLA LEXIS 432, at *10 (March 13, 1992); *Lattimer v. Director, OWCP,* No. 90–BLO–112, 1991 BLA LEXIS 2290, at *14 (Dec. 30, 1991); *Strader v. Director, OWCP,* 90–BLO–116, 1991 BLA LEXIS 1037, at *6 (May 20, 1991); home repairs, *see, e.g., Varvel v. Director, OWCP,* No. 90–BLO–66, 1992 BLA LEXIS 431, at *11 (Mar. 13, 1992); *Woolsey,* 1992 BLA LEXIS 432, at *10; *Lattimer,* 1991 BLA LEXIS 2290, at *14; durable goods, *see, e.g., Lattimer,* 1991 BLA LEXIS 2290, at *14 (furnace, freezer, and riding lawnmower); funeral expenses, *see, e.g., Woolsey,* 1992 BLA LEXIS 432, at *10; *Grundhoefer v. Director, OWCP,* No. 91–BLO–0069, 1991 BLA LEXIS 2292, at *8 (Dec. 30, 1991); expensive nursing care, *see Julen v. Director, OWCP,* No. 90–BLO–100, 1991 BLA LEXIS 1036, at *6–*7 (May 20, 1991), and

even new dentures, *see Varvel,* 1992 BLA LEXIS 431, at *10. Other ALJ decisions have been more restrictive. In *Barnes v. Director, OWCP,* No. 90–BLO–29, 1992 BLA LEXIS 494 (Mar. 20, 1992), the ALJ concluded that the purchase of a new automobile and a piano for his church simply were not expenditures covered by either § 410.561d or the accompanying examples. *Id.* at *7–*8; *see also Orban v. Director, OWCP,* No. 91–BLO–0048, 1992 BLA LEXIS 117, at *6–*7 (Jan. 28, 1992) (concluding without discussion that eating out more frequently and purchasing new rather than used cars were not changes of position for the worse).

**11.** Although the agency's interpretation of its own regulation is entitled to deference, *see Department of Labor v. Occupational Safety & Health Review Comm.,* 938 F.2d 1116, 1119 (10th Cir.1991), the DOL's interpretation simply lacks support in the language of the regulation, *see id.* While we do not take issue with the wisdom of the approach the DOL advances today, that wisdom belongs in the Code of Federal Regulations.

addressed the scope of the waiver. As noted earlier, 20 C.F.R. § 410.561a mandates waiver of recovery of an "incorrect payment." Section 410.561d then states that recovery of an "incorrect payment" is inequitable when an individual changes position for the worse "because of a notice that such payment would be made or by reason of the incorrect payment." The reliance requirement, then, necessarily links the amount of waiver to the change of position. *See Spirt v. Heckler,* No. 83–2437–MA, 1984 WL 62786, at *2 (D.Mass Feb. 3, 1984) (granting waiver for amount of valuable right relinquished).[12] The record does not reveal the exact cost of McConnell's vacation, taken over seven years prior to McConnell's hearing before the ALJ. At that time, McConnell testified that he spent "roughly, about three-forty-five hundred and five thousand I think." The DOL did not contest this testimony.[13] The ALJ apparently credited McConnell's testimony, stating that he spent "about $5,000" on the trip. As with the reliance issue, we find that the DOL has conceded the amount expended on the vacation and therefore adopt the $5,000 figure.

After careful review of the organic statute and its accompanying regulations, we find that McConnell has satisfied the requirements of § 410.561d and is therefore entitled to waiver of $5,000 of his total overpayment.

## IV. CONCLUSION

We **AFFIRM** the Benefits Review Board's decision affirming the ALJ's determination that McConnell is not entitled to waiver based on the receipt of allegedly erroneous information or because any recovery would defeat the purposes of the Act. Because we conclude that McConnell is entitled to waiver of $5,000 of his overpayment, we **REVERSE** the Benefits Review Board's decision affirming the ALJ's determination that waiver would not be against equity and good conscience and **REMAND** to the Benefits Review Board with instructions to direct the

ALJ to reduce McConnell's overpayment by that amount.

---

12. Although the courts have not often considered the scope of waiver, ALJ decisions consistently grant partial equitable waiver as a matter of course. *See, e.g., Varvel,* 1992 BLA LEXIS 431, at *11; *Woolsey,* 1992 BLA LEXIS 432, at *11; *Grundhoefer,* 1991 BLA LEXIS 2292, at *8; *Lattimer,* 1991 BLA LEXIS 2290, at *14–*15.

13. The government objected to the line of questioning in general as not relevant to the issue of waiver, but did not contest the fact of the vacation or McConnell's estimate itself.