**Lelia NAPIER, Administratrix of the Estate of John Napier, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent.**

No. 92–3856.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1993.

Decided July 30, 1993.

Samuel L. Perkins, Gary W. Napier (argued and briefed), Lexington, KY, for petitioner.

Allen H. Feldman, Edward D. Sieger (argued and briefed), U.S. Dept. of Labor Office of Sol., Washington, DC, for respondent.

Before: NELSON and SUHRHEINRICH, Circuit Judges; and EDMUNDS, District Judge.*

DAVID A. NELSON, Circuit Judge.

This matter comes before us on a petition to review a decision of the United States Department of Labor's Benefits Review Board. The Board's decision affirmed a ruling by an administrative law judge that black lung benefits paid to a disabled coal miner on an "interim" basis, prior to final adjudication of the miner's claim, had to be paid back after the claim was denied. Applying 20

---

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

C.F.R. § 725.542, the ALJ found that although the miner had been without fault, his was a case in which repayment would neither "[d]efeat the purpose of [the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.*]" nor "[b]e against equity and good conscience."

The miner had been employed in underground coal mines for more than 15 years, and he had developed a totally disabling chronic respiratory impairment. These circumstances gave rise to a presumption that he was entitled to benefits as a miner totally disabled due to pneumoconiosis. The presumption had been rebutted, however, in administrative proceedings conducted after the interim payments began, by medical evidence indicating that he did not in fact have pneumoconiosis.

Subsequent to the denial of his claim, the miner requested that recoupment of the interim benefits be waived. While an administrative proceeding was pending on the waiver request, the miner died. The administratrix of his estate then offered to show, by autopsy evidence, that the miner really had suffered from pneumoconiosis after all. The Board held that this evidence could not be considered.

The main question before us is whether it was error to apply the doctrine of administrative *res judicata* so as to preclude the administratrix from attempting to justify retention of the interim benefits on the basis of evidence, not available when the miner's original claim was denied, indicating that the claim was meritorious. We conclude that error did occur. We shall therefore grant the petition for review and direct that the question of recoupment be reexamined in light of the post-mortem evidence of pneumoconiosis.

I

The miner of whom we have been speaking, John Napier, was born on January 28, 1915. He worked in coal mines from 1949 until 1971, and he was a federal coal mine health and safety inspector from 1971 until his retirement, at the age of 65, in 1980.

Mr. Napier filed a claim for benefits under the Black Lung Benefits Act in 1978. In September of 1980 a Department of Labor official sent an "Initial Determination" notice to Mr. Napier and Peabody Coal Company, a past employer, stating that the claimant was eligible for benefits; that Peabody was the operator responsible for providing payment; that if Peabody failed or refused to discharge its responsibility, interim payment would be initiated from the Black Lung Disability Trust Fund under 20 C.F.R. § 725.420; that in such event the claim would be sent to an administrative law judge for further proceedings; that if the claimant's eligibility were subsequently affirmed, Peabody would be required to reimburse the Fund; and that "[i]f it is subsequently determined in further proceedings that the claimant is not eligible for benefits under the Black Lung Act, any payment made shall be an overpayment and subject to recovery procedures." [1]

Peabody declined to pay benefits, taking the position that Mr. Napier was not eligible for them. Interim payments, retroactive to February 1, 1980, were therefore made from the Trust Fund. The total amount paid through July of 1983 came to $20,848.20.

In August of 1983 the administrative law judge to whom Mr. Napier's claim had been referred issued a decision and order rejecting the claim. The ALJ determined that the claimant was totally disabled by a respiratory impairment; that because he had been employed for 15 or more years in one or more of the nation's underground coal mines, he was entitled to a presumption, under 20 C.F.R. § 410.414(b), that his disability was due to pneumoconiosis; but that this presumption had been rebutted by medical evidence, including x-ray reports, establishing that Mr. Napier did not have pneumoconiosis and suffered instead from a respiratory disorder caused by smoking. (There was evidence that Mr. Napier had smoked at least one pack of cigarettes a day for 40 years or more.)

1. Similar advice was given under similar circumstances to the claimant in *McConnell v. Director, O.W.C.P.,* 993 F.2d 1454 (10th Cir.1993). The *McConnell* decision provides a clear and concise explanation of how the interim benefits system works.

The ALJ's decision was affirmed by the Benefits Review Board in March of 1987. Mr. Napier did not seek judicial review. In May of 1988, however, he filed a duplicate claim pursuant to 20 C.F.R. § 725.309. The duplicate claim was eventually referred to an ALJ for a hearing, and the ALJ has granted a request that the matter be held in abeyance pending the issuance of our decision here.

The interim benefit payments were stopped when Mr. Napier's original claim was denied in August of 1983. In November of that year a Department of Labor official sent Mr. Napier a letter requesting reimbursement of the $20,848.20. Mr. Napier did not honor the request. There seem to have been no further collection efforts until June of 1988, when the Department of Labor sent Mr. Napier a letter stating that although he had been without fault in causing the overpayment, his "inability" to repay the $20,-848.20 had not been established. The letter asked him to provide detailed information on his financial situation.

Mr. Napier did so, returning an "Overpayment Recovery Questionnaire" in which he reported monthly income of $989.45 in social security and civil service retirement benefits and investment income of $9,990 a year. His monthly expenses were said to be $650. He reported that he was free of debt and that he had cash and certificates of deposit totaling $108,200, plus 35 acres of hillside land.

In August of 1988 the question of waiving recoupment of the overpayment was referred to an administrative law judge. Mr. Napier died intestate three months later, leaving a widow and five children.[2] His death certificate listed the immediate cause of death as septic shock due to severe ulcerative colitis. The death certificate also referred to a "history of pneumoconiosis."

In February of 1989 counsel for the claimant furnished the Department of Labor an autopsy report on Mr. Napier. Among the findings made by the pathologist who conducted the autopsy was "[a]nthracosilicosis of lungs and pleura not inconsistent with simple coal workers' pneumoconiosis."

In a decision issued in the recoupment proceeding in February of 1990, following a hearing at which Mrs. Napier testified as to her financial situation, the ALJ declined to consider any autopsy evidence. Counsel for Mrs. Napier had argued that it would defeat the purpose of the Black Lung Benefits Act to require repayment of benefits received by a coal miner whose condition had actually been such as to entitle him to benefits, but the ALJ rejected this argument. "It is not my place," the ALJ wrote, "to question the correctness of another administrative law judge's decision to deny Mr. Napier's claim even if new evidence exists proving the deceased miner had pneumoconiosis."[3]

The ALJ's order declining to waive recovery was affirmed in a decision issued by the Benefits Review Board in June of 1992. The Board likewise concluded that the autopsy evidence "is not relevant to the overpayment issue," noting that "the original claim ... has been finally denied." Mrs. Napier filed a timely petition for review by this court, and the matter has been fully briefed and argued.

---

2. The ALJ was under the impression that Mrs. Napier (who was appointed administratrix) would be the principal beneficiary of the estate. It is not clear to us why the children should not be the principal beneficiaries. See Ky.Rev.Stat. §§ 391.010 and 391.030.

3. The ALJ also rejected an argument that recovery of the $20,848.20 would be "against equity and good conscience." The administratrix' arguments were framed to fit 20 C.F.R. § 725.542, which, tracking the language of 42 U.S.C. § 404(b) (a provision incorporated in the Black Lung Benefits Act by 30 U.S.C. § 923(b)) provides as follows:

"There shall be no adjustment or recovery of an overpayment in any case where an incorrect payment has been made with respect to an individual:

(a) Who is without fault, and where

(b) Adjustment or recovery would either:

(1) Defeat the purpose of title IV of the Act [the Federal Coal Mine Health and Safety Act of 1969, Title IV of which is also known as the Black Lung Benefits Act, see 30 U.S.C. § 901(b)], or

(2) Be against equity and good conscience."

The Department of Labor having previously acknowledged that Mr. Napier was without fault, the sole question before the ALJ, as he saw it, was "whether the overpayment should be waived because repayment would defeat the purpose of the Act or recovery would be against equity and good conscience."

## II

■ Mrs. Napier contends first that neither the Black Lung Benefits Act nor the regulations provide for recovery of payments that the Trust Fund was authorized to make in the first instance. In this connection she attempts to downplay the significance of 20 C.F.R. § 725.522(c), which provides as follows:

"If benefit payments are commenced prior to the final adjudication of the claim and it is later determined by an administrative law judge, the Board, or [a] court that the claimant was ineligible to receive such payments, such payments shall be considered overpayments ... which may be recovered...."

Mrs. Napier contends that her husband was not "ineligible" to receive the interim payments at the time they were made, even if he did not in fact have pneumoconiosis—so regardless of how the claim for benefits was finally decided, the interim payments could not be considered "overpayments."

Mrs. Napier did not present her argument in this form at the administrative level, and her unexplained failure to do so may mean that the issue has been waived. See *Hix v. Director, O.W.C.P.*, 824 F.2d 526, 527–28 (6th Cir.1987) (black lung claimant may not obtain judicial review of issue not raised before the Board). In any event, the contention has no merit.

The Black Lung Benefits Act says, at 30 U.S.C. § 923(b), that various enumerated provisions of the Social Security Act, including 42 U.S.C. § 404, "shall be applicable under [the Black Lung Benefits Act] with respect to a miner ... as if benefits under [the Black Lung Act] were benefits under Title II of [the Social Security Act]." 42 U.S.C. § 404(a)(1) provides that "proper adjustment or recovery shall be made, under regulations prescribed by the Secretary," when "the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter...."

The implementing regulations, as we have seen, say that if benefit payments are commenced prior to final adjudication of a coal miner's claim, and it is later determined that the claimant was ineligible, the benefits shall be subject to recovery as "overpayments." 20 C.F.R. § 725.522(c).[4] The most reasonable interpretation of § 725.522(c) is the one reflected in the letter the Department of Labor sent Mr. Napier in 1980, informing him that "*interim payment* of benefits" would be initiated from the Trust Fund if Peabody Coal Company refused to begin payment of benefits: "If it is subsequently determined in further proceedings that the claimant is not eligible for benefits under the Black Lung Act, any payment made shall be an overpayment and subject to recovery procedures." (Emphasis in original.) This interpretation is entitled to considerable deference, and we see no legitimate basis for rejecting it.

■ Most of Mrs. Napier's remaining arguments are equally unpersuasive. Her final contention, however—that the ALJ and the Board erred in refusing to consider autopsy evidence offered to show that Mr. Napier actually did suffer from pneumoconiosis— seems to have some substance.

As noted above, Mr. Napier's long history of underground coal mine employment and his disabling respiratory impairment gave rise to a presumption that his disability was due to pneumoconiosis. If this presumption had not been rebutted, Mr. Napier's claim for benefits would have been allowed. The reason the claim was not allowed was that the ALJ who adjudicated it determined, on the basis of the medical evidence available in 1983, that Mr. Napier did not have pneumoconiosis. Mr. Napier obviously could not have offered an autopsy report to counter the evidence presented to rebut the presumption, because autopsies can only be performed on the bodies of people who have died. By 1989, however, an autopsy report was available—and were it not for the doctrine of administrative *res judicata*, at least, the autopsy evidence would appear to have an obvious bearing on the recoupment issue. If Mr. Napier actually suffered from pneumoconiosis, and if he was thus actually entitled to

---

4. As explained below, recovery is prohibited where it would leave the recipient without means to pay ordinary and necessary living expenses. See 20 C.F.R. § 410.561c.

receive black lung benefits, his inability to establish that fact being solely the result of his inability to produce autopsy evidence while he was still living, it would arguably be inequitable to treat the interim payments as "overpayments." In equity and good conscience, if not in law, the $20,848.20 was arguably not overpaid if Mr. Napier's true condition was such as to entitle him to the money.[5]

Recovery of an "overpayment" is flatly prohibited, under the regulation quoted in note 3, *supra*, where the recipient was without fault and recovery would defeat the purpose of the Black Lung Benefits Act or be against equity and good conscience. The purpose of the Act, as set forth in 30 U.S.C. § 901(a), is "to provide benefits ... to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease...."

Congress imposed no means test in this connection; eligibility for black lung benefits does not depend on whether the miner would have the wherewithal to support himself in the absence of such benefits. Under the regulations, however, a means test has been introduced as a factor to be considered in determining whether it would defeat the purpose of the Act to permit recoupment of an overpayment. See 20 C.F.R. § 410.561c(a), which says that it would defeat the purpose of the Act "to deprive a person of income for ordinary and necessary living expenses."

The same thought is expressed in 20 C.F.R. § 410.561c(b), where a somewhat awkward parenthetical has been added in an apparent effort to suggest that situations may arise where recoupment of benefits would defeat the purpose of the Act notwithstanding that the person required to give the money back could still meet ordinary and necessary living expenses: "[R]ecovery will defeat the purposes of title IV in (*but is not limited to* ) situations where the person from whom recovery is sought needs substantially all of his current income (including black

lung benefits) to meet ordinary and necessary living expenses." (Emphasis supplied.)

If Mrs. Napier is correct in her view as to what the autopsy report demonstrates—and again we express no opinion on this—it seems to us that unless the doctrine of *res judicata* requires a different conclusion, this is precisely the sort of situation foreshadowed by the italicized parenthetical in the portion of § 410.561c(b) quoted above. Mr. Napier did not need the $20,848.20 to meet ordinary and necessary living expenses, but it would nonetheless defeat the purpose of the Black Lung Benefits Act to require his estate to disgorge the money if, in the light of hindsight, it should appear that he was equitably entitled to the money all along as a miner totally disabled due to pneumoconiosis.

It is true, as the ALJ pointed out in his 1990 decision, that Mr. Napier could and did appeal the 1983 denial of his claim. It is also true, as the ALJ pointed out, that the Board's affirmance of the 1983 decision did not preclude Mr. Napier from requesting modification within the first year after the claim had been denied. See 20 C.F.R. § 725.310. And under traditional concepts of *res judicata*, the final denial of Mr. Napier's claim would bar relitigation of his eligibility for benefits even if the final decision was wrong. See *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981).

The case at bar is an unusual one, however, in that the person against whom *res judicata* is being asserted is trying to keep what she already has rather than get something she does not yet have. Mr. and Mrs. Napier happen to have been more thrifty than some might have been in their situation, and the payments made to Mr. Napier in the early 1980s have not been dissipated; if the Napiers had spent all that they possessed, however, the respondent would not now be trying to get the money back. The respondent is asking us to apply the doctrine of administrative *res judicata* in a way that would reward profligacy and penalize frugality—a circumstance which, considered in con-

---

5. We do not intend to prejudge the question whether, in light of all the circumstances, the autopsy report and/or the testimony of the pathologist would establish that Mr. Napier was entitled to black lung benefits. This is a question

that must be decided, in the first instance, by an ALJ. Neither do we express any view as to whether the question should be addressed first in the duplicate claim proceeding or in the waiver of recoupment proceeding.

junction with the statutory/regulatory criteria that govern recoupment of overpayments, may have some marginal significance.

A more important consideration, perhaps, is that presentation of the evidence on which Mrs. Napier relies to show that her husband suffered from pneumoconiosis would have been impossible while Mr. Napier was still alive. The denial of Mr. Napier's original claim became final at a time when the evidence which may show that the claim ought to have been allowed was simply not available.

Finally, and most importantly, recoupment of the benefits paid to Mr. Napier is prohibited by law if such recoupment would defeat the purpose of the Black Lung Benefits Act or be against equity and good conscience. But for the doctrine of administrative *res judicata*, we would have no hesitancy in saying, for the reasons already indicated, that these criteria will have been met if the autopsy evidence establishes that Mr. Napier was entitled to benefits.

Rigid application of administrative *res judicata* is inappropriate, the Court of Appeals for the Eighth Circuit has suggested, when such application would trump the prohibition against recovering overpayments in violation of equity and good conscience. *United States v. Smith*, 482 F.2d 1120, 1123 (8th Cir.1973).[6] We agree—and we think that the case at bar is one of those rare cases where equity and good conscience require that the doctrine of administrative *res judicata* be relaxed. We do not believe that the contrary conclusion is compelled by *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121–23, 109 S.Ct. 414, 423–25, 102 L.Ed.2d 408 (1988), a decision that did not involve the recoupment of benefits already paid.

The petition for review is **GRANTED,** and the case is **REMANDED** for further proceedings not inconsistent with this opinion.

---

**6.** See also *Purter v. Heckler,* 771 F.2d 682, 691 (3rd Cir.1985) (rigid enforcement of the precept of administrative *res judicata* must be tempered by fairness and equity, in accordance with the beneficent purposes of the Social Security Act); *Artukovic v. I.N.S.,* 693 F.2d 894, 898 (9th Cir. 1982) (principles of collateral estoppel and *res judicata* are applied flexibly in the administrative law context).