Russell BENEDICT, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 93–3494.

United States Court of Appeals, Seventh Circuit.

Submitted June 8, 1994.[1]

Decided July 14, 1994.

---

1. This case was submitted to the panel on the briefs after the parties' joint motion to waive oral argument was granted.

Suzanne J. Levitt (submitted), S.I.U. Legal Clinic, Carbondale, IL, for petitioner.

Lawrence W. Rogers, Edward Waldman, Dept. of Labor, Office of the Sol., Washington, DC, John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, IL, Thomas S. Williamson, Jr., Dept. of Labor, Office of the Sol., Patricia M. Nece, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for respondent.

Donald S. Shire, Sol. Gen., Dept. of Labor, Office of the Sol., Lisa L. Lahrman, Benefits Review Bd., Executive Counsel, Clerk of the Bd., Washington, DC, for party-in-interest.

Before CUDAHY, ESCHBACH, and FLAUM, Circuit Judges.

ESCHBACH, Circuit Judge.

The Benefits Review Board of the Department of Labor ("DOL") denied Russell Benedict's request that the DOL waive its recovery of an overpayment of benefits. Benedict petitions this Court to review that decision. We have jurisdiction under 33 U.S.C. § 921(c) and 30 U.S.C. § 932(a). We deny Benedict's petition for review.

---

**2.** The Deputy Commissioner, the first level adjudication officer under the Black Lung Benefits Act, has been renamed the "district director." 20 C.F.R. § 725.101(a)(11) (1990). For consistency, we will use the term "Deputy Commissioner" throughout the opinion.

**3.** The Trust Fund is jointly administered by the DOL, the Treasury Department and the Depart-

## I.

For twenty-five years, Russell Benedict labored in the coal mines of southern Illinois. Two years before his retirement in 1980, Benedict filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (as amended) ("Act"). On July 16, 1980, the Deputy Commissioner[2] of the DOL approved Benedict's claim and informed his employer, Southwestern Illinois Coal Company ("Southwestern"), of its liability for his benefits. Southwestern contested Benedict's claim, so the Deputy Commissioner ordered payment of interim benefits from the Black Lung Disability Trust Fund ("Trust Fund")[3] to Benedict pending final adjudication of his claim. At that time, the Deputy Commissioner informed Benedict in writing that if in the future he was found ineligible for benefits under the Act, "any payment made shall be an overpayment and subject to recovery procedures."

On December 2, 1983, an ALJ determined that Benedict was not eligible for black lung benefits. Soon thereafter, the Deputy Commissioner terminated Benedict's interim benefits from the Trust Fund. Benedict appealed, but his appeal was dismissed for lack of prosecution. The ALJ's decision denying him benefits is now final.

In 1987, the Deputy Commissioner wrote Benedict requesting that he reimburse the Trust Fund for the $19,078.90 in interim benefits paid to him. Benedict asked the DOL to waive recovery of the overpayment and completed an Office of Workers' Compensation Programs ("OWCP") questionnaire detailing his financial situation. After an informal conference, the Deputy Commissioner declined to waive repayment. Benedict then requested a hearing before an ALJ. Accepting the Deputy Commissioner's finding that Benedict was without fault in the

ment of Health and Human Services, and is financed by an excise tax on coal production. *See* 26 U.S.C. § 9501. The Trust Fund is responsible for making interim payments to a black lung claimant where the responsible operator has not made the payments. 26 U.S.C. § 9501(d)(1)(A).

creation of the overpayment, the ALJ concluded that repayment would not deprive Benedict of his ordinary and necessary income and that Benedict had not changed his position for the worse on account of receiving the benefits. *See* 20 C.F.R. §§ 410.561a–410.561h. Therefore, he declined to waive Benedict's repayment obligation. The Benefits Review Board ("Board") affirmed the ALJ's decision.

██ Benedict now seeks review. "When reviewing black lung determinations, this Court reviews the decision of the ALJ rather than the Benefits Review Board." *Bracher v. Director, Office of Workers' Compensation Programs*, 14 F.3d 1157, 1161 (7th Cir.1994) (citations omitted). We must determine whether the ALJ's decision is rational, supported by substantial evidence, and consistent with governing law. *Old Ben Coal Co. v. Battram*, 7 F.3d 1273, 1275 (7th Cir. 1993); *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 691 (7th Cir.1987); *see also* 33 U.S.C. § 921(b)(3) as incorporated into the Act by 30 U.S.C. § 932(a). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finally, we note that the claimant bears the burden of establishing entitlement to waiver under the regulations. *McConnell v. Director, Office of Workers' Compensation Programs*, 993 F.2d 1454, 1457 (10th Cir. 1993); *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1042 (2d Cir.1984).

## II.

██ Section 413(b) of the Act authorizes the DOL to recover Trust Fund payments to ineligible claimants according to the provisions set forth in § 204 of the Social Security Act, 42 U.S.C. § 404. *See* 30 U.S.C. § 923(b); *Napier v. Director, Office of Workers' Compensation Programs*, 999 F.2d 1032, 1035 (6th Cir.1993); *McConnell*, 993 F.2d at 1456. Under § 204(b), if a person received benefits through no fault of his own and recovery of the wrongly paid benefits would defeat the purpose of the Act or be against equity and good conscience, recovery of the overpayment must be waived. *See* 42 U.S.C. § 404(b).

██ The DOL's black lung regulations implement these principles. 20 C.F.R. § 410.561a directs that:

[t]here shall be no adjustment or recovery in any case where an incorrect payment has been made with respect to an individual:

(a) Who is without fault, and where

(b) Adjustment or recovery would either:

(1) Defeat the purpose of title IV of the Act, or

(2) Be against equity and good conscience.

Under § 410.561c, recovery of an overpayment defeats the purpose of the Act where it would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 410.561c(a).[4] Section 410.561d defines "against equity and good conscience" to require waiver when the claimant, because of his receipt of benefits, has either "relinquished a valuable right" or "changed his position for the worse." 20 C.F.R. § 410.561d.[5]

---

**4.** 20 C.F.R. § 410.561c states:

(a) *General. Defeat the purpose of title IV* for purposes of this subpart, means defeat the purpose of benefits under this title, i.e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs. An individual's ordinary and necessary expenses include:

(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, mainte-nance, insurance ..., taxes, installment payments, etc.;

(2) Medical, hospitalization, or other similar expenses;

(3) Expenses for the support of others for whom the individual is legally responsible; and

(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

**5.** 20 C.F.R. § 410.561d provides:

*Against equity and good conscience* means that adjustment or recovery of an incorrect payment will be considered inequitable if an individual, because of a notice that such payment would be

In this case, Benedict did not challenge the amount of the overpayment[6] and the DOL acknowledged that Benedict was without fault in the creation of the overpayment. Therefore, the ALJ focused solely on whether recovery of the overpayment should be waived under the criteria of § 410.561a(b). The ALJ found that Benedict and his wife have a combined monthly income of $1,887,[7] including his pension of $144, combined Social Security benefits of $1,156, and his wife's pension of $587, and that they earn an additional $2,000 a year from the rental of their farm. The ALJ also found that the Benedicts owned a $30,000 mortgage-free home, farm land worth $42,000 and approximately $60,000 in certificates of deposit ("CDs"), individual retirement accounts ("IRAs"), and savings and checking accounts. As to their expenses, the ALJ determined that Benedict and his wife had $1,122.90 in monthly expenses.

In view of Benedict's financial circumstances, the ALJ found that Benedict had sufficient income and financial resources to meet his ordinary and necessary needs and that recovery of the overpayment would not seriously affect Benedict's standard of living. The ALJ also rejected Benedict's contention that recovery would be against equity and good conscience because Benedict made no showing of detrimental reliance and failed to show how recovery of the overpayment would present a hardship.

Before this Court, Benedict argues that the ALJ's denial of a waiver cannot be sustained. Benedict argues that the ALJ incorrectly considered only a portion of his ordinary and necessary living expenses in determining that recovery of the overpayment would not defeat the purpose of the Act. He further argues that the DOL's recoupment of the overpayment is against equity and good conscience because it will force him to relinquish a significant portion of his life savings.

■ We agree with Benedict that the ALJ did misstate Benedict's monthly expenses.[8] In his OWCP questionnaire, Benedict placed his total expenses as $1,934 a month and in his testimony before the ALJ, Benedict estimated his total expenses as $1,850 a month. Apparently, the ALJ referred only to Benedict's "other expenses" listed at $1122.90 a month in his OWCP questionnaire, without adding in Benedict's expenses for taxes, food, clothing, and utilities. While the error is significant, we do not agree that the misstatement of expenses mandates a reversal of the ALJ's decision. Before this Court, Benedict argues that when his true monthly expenses are considered, his expenses exceed his income by $47 a month ($1,887 − $1,934 = −$47). Because of this monthly shortfall, Benedict argues that he and his wife need all of their income and financial resources to meet their ordinary and necessary needs. He further argues that repayment of nearly $20,000 would deprive him and his wife of their small financial cushion. *See McConnell,* 993 F.2d at 1460 (citing cases which hold that § 410.561c(a) contemplates a small monthly cushion between expenses and income and the retention of sufficient resources for emergencies).

---

made or by reason of the incorrect payment, relinquished a valuable right (example 1); or changed his position for the worse (example 2). In reaching such a determination, the individual's financial circumstances are irrelevant.

In example 1, the claimant stops working as a result of receiving benefits. In example 2, the claimant decides to incur financial obligations (e.g., college expenses for claimant's child) that could be paid only because of the benefits received. These examples are illustrative and not exhaustive. *McConnell,* 993 F.2d at 1461–62.

6. Before the ALJ and the Benefits Review Board, Benedict argued that the interim benefits did not constitute an overpayment and that the DOL did not have statutory authority to recover the overpayment. The Board decided both issues against

Benedict, and Benedict does not seek review of those decisions.

7. The income amounts to which Benedict testified add up to $1,887 even though the ALJ incorrectly referred to $1,877 in his order.

8. Benedict did not bring the erroneous expense figure to the attention of either the ALJ in his motion to reconsider or the Benefits Review Board in any of his filings. The DOL suggests Benedict has waived any claim relating to the ALJ's misstatement of his expenses. Because the ALJ clearly misstated Benedict's monthly expenses, waiver is inappropriate. However, we urge claimants to bring calculation mistakes promptly to the attention of the ALJ and Benefits Review Board.

The weaknesses in Benedict's position are two-fold. First, Benedict understates his monthly income by at least $167 a month by not including his rental income. Thus even if we accept Benedict's highest expense figure, Benedict has a monthly income surplus of at least $110 ($1,887 income + $167 rental income − $1,934 expenses) *before* having to dip into his savings.[9] This monthly surplus demonstrates that Benedict has sufficient income to meet more than his ordinary and necessary needs. *See* 20 C.F.R. § 410.561c(a). Second and more important, the ALJ's decision makes clear that he did not find the comparison between Benedict's income and expenses to be dispositive. Instead, the ALJ explicitly relied on Benedict's other financial assets, including his home, farm, and retirement savings, in concluding that recovery of the overpayment "would not seriously affect Benedict's standard of living." A fair reading of the ALJ's decision makes clear that even if he had accurately stated Benedict's monthly expenses, he would have reached the same conclusion. For these reasons, we uphold the ALJ's conclusion that requiring Benedict to repay the interim benefits would not defeat the purpose of the Act.

■ Finally, Benedict argues that recovery of the overpayment is against "equity and good conscience." Section 410.561d of the DOL's black lung regulations makes clear that a recovery of an incorrect payment will be considered inequitable only if an individual demonstrates that he relinquished a valuable right or changed his position for the worse in reliance on the benefits. In reaching such a determination, the individual's financial circumstances are irrelevant. 20 C.F.R. § 410.561d. Benedict admits that he neither relinquished a valuable right nor changed his position for the worse because of the overpayment. Instead he argues that recovery of the overpayment would simply be unfair because it would force him and his wife to relinquish a large portion of their savings accumulated over the course of their lives. While we are not unsympathetic to Benedict's position, we also recognize that

Benedict's receipt of the interim benefits enabled him, at a minimum, to maintain his high level of savings. Had Benedict not received the interim benefits, he may well have spent whatever savings he accumulated in precisely the same way that he spent the interim benefits, thus reducing his life savings by a corresponding amount. Because the receipt of interim benefits aided Benedict's savings efforts and put Benedict in no worse position than if he had not received the benefits, the ALJ correctly concluded that requiring Benedict to repay the Trust Fund would not contravene equity and good conscience.

### III.

For all of these reasons, we DENY Benedict's petition for review.

CUDAHY, Circuit Judge, concurring.

Although the majority opinion ably touches the bases required under the statute and the regulations, there are aspects of this case that are disturbing. We are dealing here with a frugal retiree of modest means, and the process for making this regulatory determination should be tailored to these circumstances.

It is not reassuring that the ALJ made a 42% error in calculating the claimant's expenses, and that this egregious mistake passed undetected through the scrutiny of the Benefits Review Board. No doubt our efforts to reconstruct the numbers are adequate, but the credibility of the process is not enhanced.

In addition, in dealing with Benedict's assets, there has been no apparent effort to assess liquidity or other relevant characteristics. How liquid is the farm land? Are there penalties connected with the liquidation of the certificates of deposit? Are withdrawals from the IRA taxable? How would liquidation of certain assets, such as the farmland, affect income? Merely adding the estimated values of Benedict's assets without a

---

9. Additionally, we note that neither the ALJ nor Benedict included any interest income from Benedict's $60,000 in CDs, IRAs or savings and checking accounts in their monthly income calculations. If this additional income is considered, Benedict would have an even larger monthly surplus of income over expenses.

more searching consideration of their nature is at best a crude method for determining that repayment of $19,000 in one lump sum will be relatively painless.

No doubt there is a cushion here provided in large part by Benedict's very modest standard of living. It is ironic that this very frugality now tends to buttress the Department's case for recovery of the black lung overpayments.