**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 4, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BIG HORN COAL CO.

     Petitioner,

v.

SYLVIA SADLER, widow of o/b/o Edgar
Sadler, deceased; DIRECTOR, OFFICE
OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

     Respondents.

No. 17-9558

_____

**Petition for Review from Order of the Benefits Review Board**
**(Benefits Nos. 16-0395 BLA and 16-0612 BLA)**
_____

John S. Lopatto III, Washington, D.C., for Petitioner.

Evan B. Smith, Appalachian Citizens' Law Center, Whitesburg, Kentucky, for Sylvia
Sadler, Respondent.

Ann Marie Scarpino (Kate S. O'Scannlain, Solicitor of Labor, Maia S. Fisher, Associate
Solicitor, Gary K. Stearman, Counsel for Appellate Litigation, with her on the brief), U.S.
Department of Labor, Washington, D.C., for Director, Office of Workers' Compensation
Programs, Respondent.

_____

Before **BACHARACH**, **BALDOCK**, and **EBEL**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

Big Horn Coal Company petitions this court to review the judgment of the Department of Labor Benefits Review Board ("Board") awarding benefits to Edgar Sadler, a then-living miner, under the Black Lung Benefits Act (BLBA or "the Act"), 30 U.S.C. §§ 901-944 (2016). The BLBA compensates coal miners who become totally disabled from pneumoconiosis, or black lung disease, on the job. The BLBA's statute of limitations requires miners to file claims for benefits within three years of receiving a medical determination of total disability due to pneumoconiosis. 30 U.S.C. § 932(f) ("Any claim for benefits by a miner under this section shall be filed within three years after . . . a medical determination of total disability due to pneumoconiosis."). In interpreting this statute of limitations, the Secretary of the Department of Labor issued 20 C.F.R. § 725.308(c) (2010), which provides that the time limits in section 932(f) "are mandatory and may not be waived or tolled except upon a showing of extraordinary circumstances."[1] 20 C.F.R. § 725.308(c). This appeal turns on the validity of the Secretary's regulation in section 725.308(c) and the interpretation and application of the "extraordinary circumstances" test contained therein.

Sadler received a total disability diagnosis in 2005, but he did not file the claim at issue here until 2010. Despite that delay, an administrative law judge (ALJ) awarded benefits to Sadler upon finding that "extraordinary circumstances" existed to warrant tolling the statute of limitations. The Board affirmed the ALJ's order. In

---

[1] Effective August 31, 2018, paragraph 725.308(c) was redesignated as 725.308(b). 83 Fed. Reg. 27695

this petition for review, Big Horn challenges the Board's order in two respects. First, it claims that section 725.308(c) is invalid. Alternatively, it argues that, even if section 725.308(c) is valid, there are no "extraordinary circumstances" here sufficient to justify tolling the statute of limitations. Exercising jurisdiction pursuant to 33 U.S.C. § 921(c) and 30 U.S.C. § 932(a), we hold that section 725.308(c) was validly promulgated. However, we lack jurisdiction over Big Horn's argument regarding whether extraordinary circumstances existed to warrant tolling the statute of limitations because Big Horn failed to exhaust it before the Board. Accordingly, we AFFIRM the Board's decision and DISMISS the petition.

## I. BACKGROUND

The BLBA provides medical and modest monetary benefits to totally disabled coal miners (and their survivors) who suffer from black lung disease—a latent, progressive, and irreversible lung disease caused by breathing too much coal-mine dust. To obtain benefits under the BLBA, a miner must file a timely claim that demonstrates that: "(1) he or she suffers from pneumoconiosis; (2) the pneumoconiosis arose out of coal mining employment; and (3) the pneumoconiosis is totally disabling." Energy W. Mining Co v. Oliver, 555 F.3d 1211, 1214 (10th Cir. 2009). A claim is timely under the BLBA if it is filed within three years of the miner receiving "a medical determination of total disability due to pneumoconiosis." 30 U.S.C. § 932(f). Typically, the last coal mine operator for whom the miner worked for a cumulative period of at least one year is responsible for paying benefits to a successful claimant.

3

20 C.F.R. § 725.494. In this case, the responsible employer, Big Horn, objects only to the timeliness of Sadler's successful claim for benefits.

Sadler worked as a coal miner in Wyoming for Big Horn from 1953 to 1987. Between 1990 and 2010, Sadler filed three claims for benefits under the BLBA. Big Horn's petition concerns Sadler's third claim, but, in order to understand that claim, it is helpful to review all of Sadler's filings. In 1990, Sadler filed his first claim for black lung benefits, which was denied. Then, in 1994, Sadler filed a subsequent claim as permitted by 20 C.F.R. § 725.309. At this point, Sadler had not yet received "a medical determination of total disability due to pneumoconiosis" to trigger the BLBA's three-year statute of limitations. Sadler's second claim was also denied for failure to prove that he suffered from pneumoconiosis, first by the District Director of the Office of Workers' Compensation Programs in 1996, then by an ALJ in 1998, and finally by the Board in 2000.

Sadler next sought modification of the denial order. The District Director denied Sadler's request in 2001. Sadler appealed, and his claim was forwarded to the Office of Administrative Law Judges for a hearing. The hearing on Sadler's request for modification was delayed several times between 2001 and 2006 due to continuances sought by both sides. In late August 2005, Sadler requested a continuance because, as his wife explained in a letter to an ALJ overseeing the case, Sadler had been admitted to a hospital for extensive pneumoconiosis testing and it was "too soon for the results to be completed . . . to submit" as evidence. Supplemental Appendix (S.A.) at 3. Sadler's request for a continuance was granted.

4

The next month, in September 2005, the doctor sent Sadler a letter diagnosing him with "[c]oal worker's pneumoconiosis" and further opining that Sadler had "total respiratory disability from performing his last coal mine job of one year's duration." Joint Appendix (J.A.) at 123. Sadler did not submit the diagnosis letter to the ALJ. However, Sadler later testified that he received and read the letter that same month. At this point, the three-year statute of limitations began to run, giving Sadler until September 2008 to file a claim under the BLBA. In 2006, amid more continuances regarding his already-pending claim, Sadler obtained an attorney, Tony Alback, after having been mostly unrepresented since July 1990. It is unclear from the record whether Sadler provided the 2005 doctor letter to Alback.

On June 6, 2008, Alback filed a motion on behalf of Sadler to withdraw Sadler's request for modification of the order denying his 1994 claim for benefits. This motion was filed with Judge William S. Colwell, the ALJ assigned to Sadler's case. The motion indicated that Sadler would be "filing a new claim with the District Director" because Sadler and Alback had determined that it was in Sadler's "best interest to begin the proceeding anew in light of [his] recent medical condition and treatment therefore." J.A. at 64. On June 12, 2008, Judge Colwell conducted a hearing on Sadler's motion to withdraw his request for modification.

At the hearing, Judge Colwell made several statements that are relevant to this appeal. First, Judge Colwell quoted the letter from Alback that explained that Sadler intended to dismiss his claim and file a new one. Then, Judge Colwell explained what he understood the law to permit regarding the withdrawal of claims:

5

> [I]t appears to me that [under Section 725.462] we have the option, if the parties agree to it and wish to do this, is the Claimant may withdraw the modification request, the last modification request . . . . And if you all decide -- the Claimant decides that there's not sufficient medical evidence at this point to go forward with that, if the Claimant wants to withdraw those issues -- only the request for modification, then I have the authority to do that.

J.A. at 54. Judge Colwell then stated that if Sadler withdrew his request for modification, the withdrawal would "serve as a denial and that case [would] be over," but Sadler "then would have an opportunity to file a subsequent claim or another claim," and "then there's an opportunity . . . to use the more current evidence." Id. at 54–55.

Next, Sadler's attorney announced that it was Sadler's "preference that the existing case, the motion to withdraw, be granted by the Court." Id. at 57. Judge Colwell accepted Sadler's motion to withdraw:

> I also believe that he understands that he has now time to gather additional medical evidence -- more current, more recent medical evidence -- and that he knows that he has the opportunity to file another, subsequent claim. . . . I will agree to Claimant's request, to withdraw the modification request.

Id. at 59-60. Big Horn did not object to Sadler's request to withdraw his claim for modification without prejudice.

On June 1, 2010, five years after his total disability diagnosis, Sadler filed pro se a third claim for black lung benefits, the claim that underlies this petition. Sadler submitted his 2005 medical diagnosis letter with that claim, and the District Director awarded benefits to Sadler. The Black Lung Disability Trust Fund ("Trust Fund") then began paying the benefits Sadler was awarded pursuant to the BLBA's interim

6

benefits provision, 20 C.F.R. §725.420.[2] Big Horn appealed the District Director's decision and requested a hearing before an ALJ. In preparation for the hearing, Big Horn deposed Sadler in September 2013. At the deposition Sadler testified that he remembered receiving the medical diagnosis letter in the mail in 2005 and reading it. Sadler died several months after his deposition, before the ALJ hearing took place, at which point the Trust Fund stopped making payments to him pursuant to 20 C.F.R. § 203. However, Sylvia Sadler, Edgar's widow, continued to pursue her husband's claim after his death. She also filed a separate survivor's claim for benefits, but Big Horn does not contest that claim.

Eventually, Big Horn filed a motion to dismiss Sadler's 2010 claim as untimely under the BLBA's three-year statute of limitations. Judge Colwell was again assigned to the case, and he denied Big Horn's motion to dismiss. Judge Colwell agreed that the statute of limitations had run on Sadler's claim because he found that Sadler's total-disability diagnosis was communicated to him in 2005 and yet he waited five years to file his claim. However, Judge Colwell determined that "extraordinary circumstances" existed to warrant the tolling of the statute of limitations. J.A. at 244–45. Regulations interpreting the BLBA's statute of limitations state that it "may not be waived or tolled <u>except upon a showing of</u>

---

[2] 20 C.F.R. §725.420 provides that, if a mine operator refuses to pay benefits to a claimant after an initial determination of eligibility during the pendency of its appeals, "benefits shall be paid by the [Black Lung Disability Trust Fund] to the claimant . . . and the operator shall be liable to the fund, if such operator is determined liable for the claim . . . ."

extraordinary circumstances." 20 C.F.R. § 725.308(c) (emphasis added). Judge Colwell explained that the "extraordinary circumstance" that warranted tolling was primarily the fact that, at the previous June 12, 2008 hearing, he (Judge Colwell) had stated that Sadler would be able to file a subsequent claim in the future and that Sadler relied on those statements to decide that he should withdraw his request for modification of his second claim. Secondarily, Judge Colwell expressed a concern about the competency of Sadler's attorney in general and specifically with regard to Alback's advice that it was in Sadler's best interest to withdraw his request for modification. After finding for Sadler on the merits, Judge Colwell issued an order awarding Sylvia Sadler survivor's benefits pursuant to 30 U.S.C. § 932(l), which requires approval of the survivor's claim if the living miner claim is determined to be valid. Big Horn filed a motion for reconsideration, which Judge Colwell denied.

Big Horn appealed the ALJ's award of benefits to the Board, raising, inter alia, the two claims Big Horn raises in its petition to this court: (1) that 20 C.F.R. § 725.308(c) was invalidly issued by the Secretary of the Department of Labor, and (2) that Judge Colwell misapplied 20 C.F.R. § 725.308(c) when he determined that extraordinary circumstances warranted tolling the statute of limitations. In opposition to the ALJ's tolling of the statute of limitations, Big Horn raised two specific arguments to the Board. First, Big Horn asserted that extraordinary circumstances could not be established by attorney negligence. Second, Big Horn argued that Sadler's reliance on the ALJ's statements regarding his ability to file a new claim did not constitute an extraordinary circumstance because those statements

8

should not have been made in the first place. Specifically, Big Horn argued that Judge Colwell should have been disqualified because he "abdicated neutrality" by giving "erroneous information to [Sadler] at the 2008 hearing," S.A. at 16 (cleaned up), that lacked "any observation that the August 2005 letter [from Sylvia Sadler] about the 2005 pulmonary examination at the National Jewish Hospital was a statute of limitations land mine," id. at 18.

The Board held that section 725.308(c) was lawfully promulgated. And it agreed with Judge Colwell that Sadler's good faith reliance on the tribunal's misrepresentation of Sadler's ability to file a new claim justified tolling the statute of limitations as an extraordinary circumstance. As a result, the Board affirmed the ALJ's awards of compensation to Sadler and his surviving widow.

We grant Big Horn's petition for review. We agree with the Board's conclusion that the Secretary validly promulgated section 725.308(c). However, we lack jurisdiction to consider Big Horn's remaining arguments related to whether extraordinary circumstances existed in this case because Big Horn failed to raise those arguments to the Board. Accordingly, we DISMISS the petition and AFFIRM the Board.

## II.    DISCUSSION

### A. Validity of 20 C.F.R. § 725.308(c)

We are first asked to address whether the Secretary of Labor validly promulgated 20 C.F.R. § 725.308(c). Reviewing that issue de novo, we uphold that regulation.

9

To determine whether an agency's regulation is valid under a particular statute, we apply the analysis articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984). Chevron is applicable where, as here, an agency has promulgated a regulation to interpret a statute that it administers. The Department of Labor is tasked to administer the BLBA. 30 U.S.C. § 936 ("The Secretary of Labor . . . [is] authorized to issue such regulations as [he or she] deems appropriate to carry out the provisions of [the BLBA]."). And the Secretary promulgated 20 C.F.R. § 725.308(c) to interpret 30 U.S.C. § 932(f) in Part C of the BLBA. Section 932(f) provides that "[a]ny claim for benefits by a miner . . . shall be filed within three years after . . . a medical determination of total disability due to pneumoconiosis." Section 725.308(c) provides further that the three-year statute of limitations that applies to the BLBA is "mandatory and may not be waived or tolled except upon a showing of extraordinary circumstances." Thus, we apply Chevron to determine whether to defer to the agency's interpretation of section 932(f).

The Chevron-deference analysis proceeds in two steps. Chevron, 467 U.S. at 842. First, if Congress has spoken "directly" to the "precise question at issue," the inquiry ends, and we must give effect to the express intent of Congress. Id. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court [in step two] is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

10

> For a construction to be permissible, we need not conclude it was the only one the agency could reasonably have adopted or that we would have rendered the same interpretation if the question arose initially in a judicial context. . .We look only to whether the implementing agency's construction is reasonable.

Keller Tank Servs. II, Inc. v. Comm'r of Internal Revenue, 854 F.3d 1178, 1196 (10th Cir. 2017) (citing Chevron, 467 U.S. at 843 n.11).

To determine whether Congress has spoken directly to an issue, we look at both the statute's language and the legislative history. Chevron, 467 U.S. at 859–64. The language of 30 U.S.C. § 932(f) is silent with regard to whether the three-year statute of limitations may be tolled under any circumstances. Similarly, the legislative history contains no discussion of tolling the limitations period. Therefore, we conclude that Congress has not directly spoken to the precise question at issue. See Chevron, 467 U.S. at 843. As a result, we can proceed to the second step of Chevron and consider whether the Secretary's regulation in section 725.308(c) was a reasonable interpretation of section 932(f).

The Secretary's interpretation that the BLBA's statute of limitations may be tolled in extraordinary circumstances is reasonable because section 932(f) is nonjurisdictional and therefore subject to a presumption that equitable tolling is permitted. See Holland v. Florida, 560 U.S. 631, 648 (2010); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95–96 (1990). In Irwin, the Supreme Court recognized a presumption that equitable tolling is available in suits against the federal government. 498 U.S. at 95–96. The Court later explained that the presumption applies to federal statutes of limitations because "Congress legislates against a background of common-law

11

adjudicatory principles. . . . [and] [e]quitable tolling, a long-established feature of American jurisprudence derived from 'the old chancery rule,' is just such a principle." Lozano v. Montoya Alvarez, 572 U.S. 1, 10–11 (2014) (internal quotation marks omitted). In Holland, the Court described Irwin as holding that "a nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in favor 'of equitable tolling.'" 560 U.S. at 645-46. We conclude that the holdings of Holland and Irwin are applicable here because, when Congress enacted the BLBA in 1969, which included a three-year statute of limitations substantially similar to that in section 932(f),[3] it was legislating with the common-law principles described with those cases in mind. Applying the rules of those cases, we conclude that section 932(f) is subject to the presumption that it permits equitable tolling and therefore the Secretary's interpretation that the statute of limitations may be tolled in extraordinary circumstances was reasonable.

First, the BLBA's three-year statute of limitations is nonjurisdictional. In a series of opinions the Supreme Court has "explained time and again that statutes of limitations are not always—and, indeed, presumptively are not—jurisdictional." Barnes v. United States, 776 F.3d 1134, 1145 (10th Cir. 2015). The test is whether Congress has "clearly stated" that a statutory limitation is jurisdictional. Id. at 1146 (quoting Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1113, 1157 (10th Cir.

---

[3] "Any claim for benefits under this section shall be filed within three years of the discovery of total disability due to pneumoconiosis or, in the case of death due to pneumoconiosis, the date of such death." Pub. L. 91-173, § 422(f), 83 Stat. 797 (1969).

2013)). In applying this bright-line test, "we focus on the legal character of the deadline, as shown through its text, context, and historical treatment." Id. (quotation omitted). Nothing in section 932(f) suggests that the limitation there is jurisdictional. The provision provides simply that claims by miners "shall be filed within three years" of a medical diagnosis of total disability. It does not state, for example, that the District Director is without jurisdiction to adjudicate claims filed outside the statutory time period. Furthermore, the BLBA is "intended to be remedial in nature." Bridger Coal Co. v. Dir., OWCP, 669 F.3d 1183, 1190 (10th Cir. 2012); see also 20 C.F.R. § 725.309 (setting no limits on the number of claims a miner can file). Absent any indication that Congress intended section 932(f) to serve as a jurisdictional limitation, we presume that it is nonjurisdictional pursuant to Barnes.

Second, it was reasonable for the Secretary to interpret the BLBA to allow the limitations period to be tolled in extraordinary circumstances because the Supreme Court has stated that nonjurisdictional federal statutes of limitations are "normally subject to a 'rebuttable presumption' in favor 'of equitable tolling,'" Holland, 560 U.S. at 645-46 (holding that, despite the silence of its statute of limitations, AEDPA permits equitable tolling). The Supreme Court has found that presumption overcome in only two cases. In United States v. Brockamp, 519 U.S. 347 (1997), the Supreme Court interpreted a statute of limitations that was silent on the question of equitable tolling as foreclosing application of the Irwin presumption of tolling. However, in doing so, the Court emphasized that the statute in Brockamp (1) "se[t] forth its time limitations in unusually emphatic form"; (2) used "highly detailed" and "technical"

13

language "that, linguistically speaking, [could not] easily be read as containing implicit exceptions"; (3) "reiterate[d] its limitations several times in several different ways"; (4) related to an "underlying subject matter," nationwide tax collection, with respect to which the practical consequences of permitting tolling would have been substantial; and (5) would, if tolled, "require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery"—a kind of tolling for which the Court admitted it found no direct precedent. 519 U.S. at 350–352.

And, in United States v. Beggerly, 524 U.S. 38 (1998), the Court held that Irwin's presumption of tolling was overcome where (1) the twelve-year statute of limitations at issue was "unusually generous" and (2) the underlying claim "deal[t] with ownership of land" and thereby implicated landowners' need to "know with certainty what their rights are, and the period during which those rights may be subject to challenge." 524 U.S. at 48–49.

By way of contrast, the BLBA's statute of limitations here is not as emphatic as was the language under review in Brockamp. Neither would application of equitable tolling here affect the "substance" of a BLBA claimant's claim as it did in Brockamp; it affects only their ability to bring the claim. Moreover, in contrast to the twelve-year limitations period at issue in Beggerly, the BLBA's three-year limitations period is not particularly long. And unlike the subject matters at issue in both Brockamp and Beggerly—tax collection and land claims—the BLBA's purpose is remedial and therefore naturally invites the application of equitable principles, see Bridger, 669 F.3d at 1190. Therefore, we conclude that the nonjurisdictional statute

14

of limitations in the BLBA is subject to the Irwin presumption that the statute permits equitable tolling. As a result, we hold that the Secretary's interpretation that the BLBA's statute of limitations may be tolled in extraordinary circumstances was reasonable.

We affirm the Board's legal conclusion that section 932(f) is entitled to deference by this court.

### B. Big Horn Failed to Exhaust Arguments Against Equitable Tolling and Accordingly We Lack Jurisdiction to Consider this Claim on the Merits

Big Horn next asks us to reverse the Board's conclusion that Sadler's reliance on Judge Colwell's statements at the 2008 hearing constituted extraordinary circumstances justifying tolling the statute of limitations. To support its claim that extraordinary circumstances did not exist here, Big Horn argues to us that Sadler and his attorney concealed the 2005 medical report from Judge Colwell such that it was not in the record before him during the 2008 hearing. Big Horn asserts that, as a result, Judge Colwell's statements that Sadler could refile and Sadler's reliance on those statements cannot rise to the level of an extraordinary circumstance because "[t]he ALJ's advice to the claimant at the 2008 hearing was correct" based on the record before him. Pet. Br. at 32 (emphasis added). Big Horn further argues that, without knowledge of the 2005 medical report, Judge Colwell had no duty "to remind

the claimant and his lawyer to read their files and see if they may have within these documents a medical determination of total disability."[4] Id.

We do not have jurisdiction to consider these legal arguments because Big Horn failed to exhaust them before the Board. McConnell v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 993 F.2d 1454, 1460 n.8 (10th Cir. 1993) (holding that Tenth Circuit was deprived of jurisdiction to consider argument not raised before the Benefits Review Board). Not only did Big Horn fail to argue to the Board that the statements Judge Colwell made about Sadler's ability to refile were "correct" based on the record before him, in fact, it argued just the opposite to the agency, stating that Judge Colwell gave "erroneous information to [Sadler] at the 2008 hearing." S.A. at 16.

None of the respondents in this case raise issue-exhaustion as an affirmative defense, but we are required to consider it sua sponte because of McConnell's holding, by which we are bound, that in the BLBA context issue-exhaustion is a jurisdictional requirement. There may be some question about the long-term viability of McConnell describing the exhaustion requirement as jurisdictional in light of subsequent Supreme Court authority advising against the "profligate use" of that label. Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013); see also Eberhart v. United States, 546 U.S. 12,17 (2005) (per curiam) ("Clarity would be facilitated . . . if courts and litigants

---

[4] Big Horn also argues, as it did before the ALJ and the Board, that attorney negligence cannot justify tolling the statute of limitations. However, the ALJ explained in his order denying Big Horn's motion for reconsideration that his grant of equitable tolling was not based on Alback's errors. J.A. at 276. Acknowledging that, the Board declined to address the issue. Because attorney negligence does not underlie either the ALJ's or the Board's decision, we do not address it.

16

used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.").[5] However, at least for now, McConnell is binding Tenth Circuit law that we are obligated to follow. Therefore, we are without jurisdiction to consider Big Horn's unexhausted argument that "extraordinary circumstances" sufficient to justify tolling the statute of limitations are not present here. Accordingly, we affirm the Board's decision to uphold the ALJ's order awarding benefits to Sadler.

### III. CONCLUSION

For the foregoing reasons, we DISMISS Big Horn's petition and AFFIRM the decision of the Benefits Review Board.

---

[5] The statute governing our jurisdiction over BLBA appeals does not contain any language to suggest that issue-exhaustion is a jurisdictional prerequisite to our hearing an appeal. See 33 U.S.C. § 921.